21-3350 Cynthia Hurst v. Caliber Home Loans, Inc. Good morning, Your Honors. Good morning. May it please the Court, my name is Andy Gerling. I represent Appellant Cynthia Hurst and the estate of Thomas Purcell. I'd like to reserve three minutes for rebuttal. Fine. The underlying lawsuit involved Mrs. Hurst and her father's efforts to modify their home mortgage through Caliber Home Loans. Mrs. Hurst provided evidence on summary judgment, which was not disputed, showing that she repeatedly provided Caliber everything it required to review her loss mitigation application. She complied with deadlines, and this entitled her to foreclosure protection under the Real Estate Settlement Procedure Act. How about those pension docs they wanted, or who was in charge of that? That seems to be one of the rugs. Yeah, and there's some cloudy issues there with what's going on with what the evidence actually showed there. There were two different retirement accounts that showed up going all the way back to early March. The one was an Edward Jones account, which is a traditional IRA. The second was this pension from LVT Steel. There was no award letter associated with the Edward Jones account. It's just deposits that Mr. Purcell was taking, $2,000 a month, directly from the Edward Jones account. That's one of the issues that the district court hung its hat on in determining whether or not there was a complete application prior to the foreclosure. Basically, that was the only grounds that the court stated. What the evidence showed in the record was that after Mrs. Hurst submitted a letter of explanation regarding the Edward Jones account, that Caliber never requested anything else regarding that account again. So they determined that the application was complete several more times after the fact, without ever hearing anything else about the Edward Jones account. Did they send you a letter or something saying it was complete? I can't recall. I know at one point they did or did something to tell you it was complete. At which point? There were several of those. The factual scenario, basically, a lot of the violations occurred in a three-month period. From March of, well, I won't say that. There were more violations, but what's up on appeal is this time period from March until mid-June when Caliber filed foreclosure and some of the additional communications that took place afterwards. You mentioned in your brief increased interest in fees and then you give a lump sum figure. Yes. As I understand it, those were because of your alleging the procedural violations, right? Correct. Did you ever actually pay the interest owed or the fees, meaning your client, of course? They're paying it currently. They're paying. So the interest and fees that, just so I understand, I'm sorry to interrupt you, but the interest and fees that relate to the procedural violations you are currently paying, not the interest on the loan, because I know it got modified. I think I'm misunderstanding the question. Okay, so as I understand it, I can find it in your brief real quick if you want. During the time when these procedural violations allegedly were going on, you were racking up interest and fees, correct, for not servicing the loan? The interest was accumulating on the mortgage during that time. And what were the fees exactly? The fees associated with that. No, not the number, but what were they related to? So you're going to have with, and I'd have to look back in the actual documents, but with a delinquent loan, every month you're going to have home inspections, which is like a quick drive by $15 a month. And did your client ever have to pay those fees? Some of these amounts were incorporated and capitalized into the eventual modified loan. So they're currently paying. They took that amount, and that's in the supplemental briefing, because that occurred after the loan modification. So that was not in the record necessarily below, to an extent. It was in the status report to the court, but not the exact figures. But that amount, basically the initial one, was $279,000. Over a year, a year and three months later, when it was finally permanently modified, it was around $330,000. If you look at the loan modification documents, which my client would... Do we have those? Those are not in the record. I would be happy to submit them to the court, since the court asked for additional briefing on the issue of standing and damages. I believe that is going to be relevant. No problem with that. No problem at all. Okay, thank you. So, and I will submit that to the court. It has a breakdown, which I provided some of that in the supplemental briefing. $24,000 to interest. Having it be an FHA loan, Caliber actually got paid a portion of this already, because it was a partial claim to the FHA. And Mrs. Hurst and now her husband, who wasn't on the original loan, have had to sign a subordinate note to the tune of $80,000-some, which basically by the time this loan, provided they don't refinance or anything else, matures, there's going to be a lump sum of money that's still due afterwards. There's some talk and allegations about the plaintiff having to pay an increased interest rate as a result of these events. Is there an amount of an increased interest rate that would have occurred in connection with the loan modification? I don't know the answer to that right off the top of my head. What I would have to look at and see is if there was, and I don't remember exactly what you're referencing in the briefs to this, but an increased interest rate. Well, you're not asking for any damages as a result of an increased interest rate. Is that correct or not correct? Well, at this point, that's an issue. Since my client's moved for summary judgment as to liability only, and the issue wanted to go to trial to determine the amount of her damages, there hasn't been any ask on an amount of damages. Okay, that's not a contested issue in the case is what you're saying? Not currently, no. Okay. No, so that would be an issue for trial. Well, I mean, it would have to be an issue requested in the complaint to be an issue for trial. I mean, you would know if this is an issue in the case or not. Well, the amount of my client's damages, they have presented sufficient damages to survive summary judgment. They did that in the record below. They provided information regarding the damages. At the time summary judgment was briefed, there was not a final modification, so that has since changed it. If there's a different interest rate in the final modification than what was in the original loan modification, or if whatever rates were available at that time, that's going to be a factual issue that will have to be flushed out at trial because this developed after. To Judge Clay's point, you would have to amend your complaint at that point. Potentially, yes. Yes, because it's not in there now. It's not in there now because the fact had not arisen yet. That's correct. You know, there was so much back and forth here in terms of Caliber and Ms. Hurst in terms of trying to get this loan modified, telephone calls and e-mails, all kinds of stuff. I guess I'd like to focus a little bit on Caliber's diligence, but also on Ms. Hurst's diligence. You talked about the two pension accounts, I guess, and much has been referenced with respect to the Edward Jones account. But I guess at the end of the day, there seems to be just a factual dispute, perhaps, as to how diligent your client was in responding, and maybe even as to how correct or diligent Caliber was responding because they had different people responding to the phone calls and some people said everything's complete and some said we need more information. It just looks like a couple of months of just a lot of back and forth. It was a hodgepodge of a lot of things going on. But I guess my question is, on this issue of diligence, is your argument that there's really, on the merits here, that there's really a disputed fact that needs to be resolved at some point by a trier effect? No. Okay. It's a legal issue. It's a legal issue, okay. Yeah, and it has to do with what is the duty to exercise reasonable diligence under Regulation X. The section 1024.41b.1, basically... Okay, so reason... I hate to say this because you're probably the expert on this and we're not, but to Judge Cole's point, when we hear reasonable diligence, we think jury. So explain to us why we're wrong. In other words, whether a company is acting in a reasonably diligent matter says to judges, jury. Not you, Judge. You understand my question? Yes, and ultimately if this case is reversed, that could be an issue for a jury. I guess thinking about that... It seems like a jury issue. Yeah, it may be. Does the statute answer the question? Does RESPA provide for a judge or jury to decide this question, or are you just saying we've submitted evidence? Because like Judge Cole, when I look at the evidence, to me it's like a hodgepodge, and I say, okay, whether they were reasonably diligent, maybe that's a jury question. Maybe it's a way of judges washing their hands of it and saying, better someone else. Well, I think when you have evidence that's not disputed, you have telephone calls that were recorded, and you listen to those telephone calls. And during the course of those calls, they tell her, either one, they fail to tell her what an issue is. And this has to do with the scanning of the 4506T forms. They fail to tell her what the issue is at any point during those calls. Part of the duty of reasonable diligence, and this plays from some of the other portions of the regulation, is servicers are required, let me see if I can remember, it's 1024.38. And that talks about policies and procedures that servicers have to have in place, including personnel available to answer a telephone call and to be able to instruct borrowers what documents they still need to complete an application. If the servicer, if a borrower calls and asks and says, hey, I don't get it, I don't know what you want from me, I'm trying. And clearly Mrs. Hurst was trying. They're not exercising reasonable diligence, and I think a judge could make that determination based on the evidence. If they look at Caliber's internal records and it shows, we need a properly scanned, whatever that means, 4506T form, and they never request it or tell Mrs. Hurst that, I think that's a pretty clear-cut violation of the reasonable diligence. Okay, your initial time has expired. You'll have your rebuttal time. Thank you. Morning. Good morning, Your Honors. May it please the Court, Kyne Hudson for Caliber Home Loans. The plaintiffs lack standing to press their reasonable diligence and adequate notice claims because they fail to show a causal connection between their alleged emotional distress and a specific violation underlying either of those claims. As for their dual tracking claim, however, the plaintiffs have shown Why aren't the claims intertwined? In other words, why aren't the reasonable diligence, the dual tracking, and the adequate notice all intertwined? Well, those claims represent different regulatory requirements. I'm just saying for standing purposes. I'm sorry, I recognize otherwise. Sure, sure. And for standing purposes, I think both this Court and the Supreme Court have been very clear that standing is not dispensed in gross. Plaintiffs need to establish standing for each claim they seek to press. And I don't think there's any doubt that here these represent three discrete claims because each regulatory provision imposes discrete obligations. And so to turn to their dual tracking claim, just to close out the standing issue on that point, in our view the plaintiffs have shown enough of a causal connection between the alleged violation and an injury in fact, namely the attorney fees that they've incurred in responding to the foreclosure proceeding. Can you explain that to me? Because we usually say attorney fees are not sufficient. Are you saying because they're not affirmative attorney fees, meaning like plaintiff attorney fees, but rather they were forced into litigation? So I wouldn't say that it's an affirmative distinction. That's not the key distinction. It's this proceeding versus a different proceeding. So there's no doubt that incurring attorney fees to litigate this case, that's not an injury in fact for standing purposes. But this is an affirmative case, the way I'm thinking about it. Sure, yes, exactly. And so because they were forced to incur attorney fees in an entirely separate proceeding, the state foreclosure proceeding, that seems clear to be a sufficient injury in fact. To take a common law example. Should the interest also be injury in fact? I think so. For this precisely, exactly. So the key point here is these classic pocketbook injuries, they're all related to the initiation of the foreclosure proceeding, at least as far as I can tell from the briefing. Can I ask you one other question about this fact question? So I was looking at her, the first time you ruled her ineligible for the loan, the first time you processed the loan. Are you familiar with the doc I'm talking about? It's like a HUD document. I've got it. It says she was ineligible to receive the loan. Oh, at the very, very beginning of the process. Yes. Yes, I see. Why was she ineligible? I don't know the answer to that question, Your Honor. I'm sorry. Okay. I don't know the answer to that. And I don't believe it's in the record as far as I know the answer to that. Okay. All right. So turning to the merits of the dual tracking claim, that claim fails on the merits because the plaintiffs have failed to tie any of their various arguments to the regulatory text. And that's where I'd like to begin, with the text of Regulation X. And here the relevant provision is 12 CFR Section 1024.41. And start with the definition of a loss mitigation application. This term is defined as, quote, an oral or written request for a loss mitigation option that is accompanied by any information required by a servicer, unquote. There's one such request relevant here, the application submitted on March 22, 2018. I think everyone agrees on that point. And Section B21B in turn requires, quote, after receiving the loss mitigation application, unquote, that the servicer, one, acknowledge receipt, two, indicate whether the application is complete or incomplete, and three, if the application, quote, is incomplete, the notice shall state the additional documents and information the borrower must submit to make the loss mitigation application complete, unquote. Because the notice required by B21B is sent specifically in response to the loss mitigation application, there is one document that's relevant here that falls under B21B. That's the March 23 letter Caliber sent in response to the March 22 application. So that much is clear and I hope helps clarify the import of all of the various documents that are involved in the case. So Section C24, meanwhile, says that once a borrower submits all the documents required under the B21B notice, the application becomes facially complete for the purposes of the regulation's dual tracking protections. Here, as Caliber's own letter explained, the application became facially complete on April 5th. But C24 further provides, and this is really the critical language for this case, quote, if the servicer later discovers that additional information or corrections to a previously submitted document are required to complete the application, the servicer must promptly request the missing information or corrected documents and treat the application as complete for the purposes of the regulation's dual tracking provisions until the borrower is given a reasonable opportunity to complete the application, unquote. The critical question for the plaintiff's dual tracking claim is whether the application was complete under C24 when Caliber initiated foreclosure. And the key point is the application was not complete. The two letters that Caliber sent on May 1st, so these are C24 letters, the two letters it sent on May 1st promptly and clearly requested the additional information Caliber needed and provided the plaintiffs a... And what did they request? Is that the Edward Jones thing? That is, so they requested numerous things. There are really two key categories of documents. One is an explanation of the Edward Jones deposits and also noting that if it's pension income, they would need an award letter. And two are properly executed in scanned 4506-T forms. So those are the two key categories. And which ones did you get? Because I thought you got some of them. Yes, so those are the two categories we did not receive. There were additional documents such as profit and loss statements and bank statements that were requested. So you didn't get the signed 4506-T forms from Hearst or Purcell? Because I thought you requested both. We did request both and we did not receive properly executed and scanned 4506-T forms from either of them until after the foreclosure proceeding was initiated. Okay. I think that Mr. Gerling said there was no award letter here. Is that correct? There was much said about this award letter, but apparently that's a non-issue. There was no such letter. As far as the record indicates, yes, I think that's right, Your Honor. I think that's right. And I think from Calaver's perspective... What you asked for, I'm sorry to interrupt, but what you asked for, you said, was an explanation. And that's what the record reflects. And I thought he said that the explanation came. Did it come after the foreclosure? One relevant letter was submitted, and that was submitted before the foreclosure. And the letter here... So why wouldn't that have handled it? So the letter here is May 8th, was submitted on May 8th. And the district court discusses this in some detail. It is an unsigned blank page stating, quote, this letter is to verify the deposit amount of $2,000 monthly from retirement account, unquote. That's it. Nothing else. Without even an indication of the provenance of the document. And so she didn't sign it or anything? Correct. Exactly. And I think that to Judge Kuhl's point about the existence of an award letter, I think my understanding of the record is that there was no... In reality, there was no such award letter for the Edward Jones deposits because they weren't pension. It was an IRA. But Caliber needs to know that. It needs to know that this isn't a pension. They just need an explanation as to why there was not one. Exactly. What is this? If it's a pension account, we need an award letter. And the document that was submitted on May 8th that I just referenced doesn't fulfill that request. And that was the district court's conclusion on that point, that it's clear that it doesn't fulfill that request. And even beyond that, the key thing here is there's no doubt from the record, from the documents that Caliber repeatedly sent to the plaintiffs, that it never considered the application complete. I don't think there can be any doubt that Caliber never considered the application complete up until after the foreclosure proceeding was initiated. Can I ask you another question? I just want to go back to this intertwined thing just for a second, just so I properly understand it. And what I mean intertwined, so I agree with you that you have to demonstrate standing for each individual claim. But maybe I just don't understand this. The way I'm thinking about it is, her allegation is, had you given adequate notice or exercised reasonable diligence, I would have completed the application, and therefore you wouldn't have foreclosed. And so they can all tie to the, you could say, for each one, as a result of each one I incurred attorney's fees, as a result of each one I incurred interest. So I agree they're not intertwined. That's a bad word to use. But I mean, separating them out, they all relate to the same series of back and forth. And thus they all relate to the interest and they all relate to the attorney's fees. Yes, so I'm glad you asked that question, Your Honor. We agree that conceivably the argument that you outlined is permissible under Regulation X. That is available to a plaintiff. Our position is, there is nothing in the briefing below, or even on appeal, or even in the supplemental briefing, that makes that argument, that raises that argument at all, or two, draws those causal connections. So I certainly agree that that is available to a plaintiff as a theory. Your point is it's forfeited and you can forfeit arguments for a jurisdiction, just not against, so you lose the standing. Okay, got it. That's right. And in fact, that's precisely the point that this Court made in the Ward case. So to turn back very briefly, I suppose, to the... Sorry about that. No, no, no. Turning back to the dual tracking claim. So focusing specifically on that claim. That claim is very straightforward. The provision simply says, and this is F2, says, you can initiate a foreclosure proceeding if you have a complete application. There's no doubt that the application was incomplete, both incomplete under the definition of a complete application and not facially complete either, because Caliber had not received the documents that it requested. That's enough to dispose of the dual tracking claim all by itself. And so then we have the adequate notice and reasonable diligence claims. And as I've explained, the plaintiffs lack standing on those claims because they haven't shown the necessary causation. And just to add a little more detail on there, I think really there are two key cases from this Court on the standing point. One is this Court's decision in Ward, which of course involved injury in fact, not traceability or causation. But there, this Court was very clear that at the summary judgment stage, you have to have specific facts. It's not enough to be conclusory. And again and again, the plaintiffs' standing theory as to those claims, as to the reasonable diligence and adequate notice claims, are conclusory. And they needed a more specific story. And for that reason, I would just like to note for the Courts, to aid the Court, the plaintiffs' only alleged injury as to the, at least as far as I can tell from their arguments, as to the reasonable diligence and adequate notice claims are emotional damages. And there's an entirely separate question about whether or not emotional damages in this context can suffice for Article III standing. The statute doesn't provide for emotional damages, right? It just provides for damages, actual damages. Right. That's right. When you say there are no supportable facts relating to the issues of reasonable diligence requirement and reasonable notice requirement, why wouldn't all the contentious and controverted correspondence and communication between the parties, why wouldn't those things constitute disputed factual evidence for those purposes? Thank you, Your Honor. So two points, I think, on that question. First, I don't think that there is any dispute over what happened. The content of the communications, both written and oral, are adequately demonstrated in the record, and I don't think either party disputes the content of those communications. They dispute the meaning and the facts being represented by the communication. So in that sense, they do dispute the facts. Your Honor, I think there might be, I suppose it's possible that there might be some dispute as to the reasonableness of each of the parties' behavior. But two things. One, that goes to the existence of liability. That doesn't address the causation story that the plaintiffs need to show with specific facts, which they failed to even allege, much less demonstrate. Well, I mean, the plaintiff is claiming that the caliber is not telling her what they require to satisfy the regulatory requirements, and that the confusing and contradictory communication indicates that. I'm not saying that she prevails, but that's her argument. So in that sense, there are disputed facts. Two things, Your Honor. One, I agree that is her argument, and that's a liability question. And in order to move beyond liability and show the causation necessary for standing, she needs to show that if caliber had not committed the violation that she alleges it committed and identify a specific violation, then the injuries that she suffered wouldn't have happened. And that's just a causal chain that hasn't been established with any facts. She's saying the injury was the drawn-out process, which was contrary to legal requirements and not in accord with the regulations. And she's further contending that, as a result, she suffered an injury. And the injury gives her standing. That's not, to me, a complicated argument to substantiate that she does have standing. Well, Your Honor, I think you're right that her argument is principally that her injury is the violation of those procedural requirements. And the Supreme Court has been clear that, and this Court, following the Supreme Court's decisions in Spokeo and TransUnion, has made clear that procedural violations cannot themselves constitute injuries. In fact, on Congress's say-so. And it's also interesting, of course, that this is important. Well, wait a minute. They're procedural violations, but she's claiming she had a substantive right, some substantive rights under the statute which she was not provided as a result of the violations. So if they're procedural violations and substantive harm, then it's not just a procedural exercise we're talking about. And I think this goes back to the colloquy that Judge Farnay had, which is if a plaintiff can show that causal connection, that a violation of a procedural requirement resulted in a substantive harm, say the initiation of foreclosure proceedings, then the plaintiff, if they make an adequate showing, can show standing. But here, the plaintiff hasn't even attempted to make that showing. Isn't it right that under TransUnion, Spokeo, Lujan, that the substantive injury, even if you have a procedural injury, the substantive injury has to happen. We have to look at it through Article III lens, not the statutory lens. And so even if Congress says there's an injury, it either has to be a de facto injury, meaning like race discrimination that preexisted and just they codified, or it has to have roots in the common law historically. Yes, exactly, Your Honor. And there's an additional wrinkle here, which is Congress hasn't codified any injuries here. All of these procedural requirements were adopted by the CFPB, and it's not at all clear how the Supreme Court would address that wrinkle. Notably, in TransUnion and Spokeo, the Supreme Court says, we grant appropriate deference to Congress's conclusions about, but it's not clear that they think that that sort of deference would be appropriate to an agency's conclusions about what constitutes an injury, in fact. Okay. Just to raise that point. Well, thank you, Mr. Hudson. Appreciate your presentation this morning. Thank you. Touching briefly on this standing issue and whether there are damages in the record, first going to the emotional distress damages, which you asked, the language of the statute says actual damages, precedent out of this court, the Murray case and the Houston case both state that emotional distress damages are recoverable. So I went and read those cases. They say they're not precluded by the statute. They don't say that the statute provides for them, correct? Correct. But on the dual tracking claim, they agree you have standing. I think they're right that the attorney's fees arguably, I mean, we always get nervous about attorney's fees, but the interest at the very least, no one's contesting that. The problem is, how do you get standing on the reasonable, I'm going to butcher these, but the adequate notice and the reasonable diligence claims? In other words, what you say in your brief is all three of them, but you don't explain how you get there, like what the causal connection is. In the summary judgment motion to the district court, touched on damages saying, and what's attached are the attorney fees, it was to the tune of $13,000, and it discusses how that was in regards to not only defending the foreclosure, but assistance in helping the hearse with having to go through the loss mitigation process. And there's an attached fee report that's redacted. You're not going to get standing for the loss mitigation ones, because those are what I would call affirmative, although I think that's a poor term. Those are ordinary fees you would incur, and the courts always say no. That you can't recover, so for example, you can't recover your fees for this lawsuit. Yeah, I understand. That's not what I'm saying. But even in a loan mitigation, right, you could do a loan mitigation pro bono, you could do it by yourself without an attorney. So those are voluntary fees you incur. You can't incur voluntary fees and have standing for that. Let me make sure I'm understanding your position, that if a borrower is having difficulty because the servicer is not exercising reasonable diligence and must retain counsel to assist them with that process, that those are not recoverable actual damages? They could be under the law. So there's a difference between a legally recoverable, which means the statute, and basis for standing. Correct. They're not a basis for standing, as I understand the law. But they could be legally recoverable. There's a difference between what Congress has said is legally recoverable and what gives us Article III standing. TransUnion makes that clear. So does our Ward case. Well, all that means is that you prevail, then you can get attorney fees. You have to have a substantive right that you're suing to vindicate in order to prevail, and these notice requirements under the regulations would be that. That would be your argument as to why they're standing. Now, whether attorney fees are available or not depends upon a number of other factors. Yes, that Mrs. Hirsch has a substantive right that Congress is able to determine that they're entitled to this information. But you agree that Congress can give you a substantive right, but you still might not have standing under Article III, which is what TransUnion explains. Correct? And our Ward case talks about. So with what TransUnion discusses, It says that point blank. It discusses, I think I'm having trouble following exactly, because I'm thinking about this from the context of whether you can have Article III by showing some tangible or intangible damage. Correct? Right. And the intangible damage at this point could be a number of things. You don't have to have for the purpose of standing an exact dollar figure of any amount. No. You could say, and as TransUnion even says, you know, the Supreme Court has recognized that even minimal tort measure damages that could be difficult to prove could still satisfy the requirement for Article III standing. So what we're going to look at here is we're going to look to the history of the case, and we're going to look to congressional judgment, a little less now since TransUnion changes Spokio a little bit. But in looking at the history, this is akin to a negligence case. There is a duty established by Congress that they could do. There's a breach of that duty, and there are damages as a result of that. So I believe that satisfies the standing question. Further? Okay. Thank you, Mr. Gerling. Thank you very much. So very much appreciate arguments, again, from both of you today in your briefing. We'll submit the case. I don't know if you've considered meeting with our mediation office to see if there's anything you can resolve here. You don't have to answer me now. We'll continue to proceed apace with our work. But just want to let you know that we do have a mediation office. This seems like the sort of case that... Okay, well, if you tried it, it didn't work, that's fine. I understand. I understand. I understand. I get it. You don't have to give me any explanation. That's fine. You tried. That's sufficient. The case will be submitted, and you may adjourn court.